STATE OF NORTH CAROLINA v. CELESTE MARCHE HINES

No. COA03-1334

(Filed 7 September 2004)

## 1. Robbery— use of a weapon—sufficiency of evidence

A motion to dismiss an armed robbery charge for insufficient evidence was correctly denied where defendant argued that the State had not presented substantial evidence that a weapon was used, but a doctor testified that the victim's head injury was caused by blunt force from an object such as a crowbar or baton and was not consistent with a fall.

## 2. Assault— on a handicapped person—hearing impairment

The denial of a motion to dismiss a charge of aggravated assault on a handicapped person was correct where defendant argued that the State did not show that the victim's hearing problem substantially impaired her ability to defend herself, but the victim testified that she had difficulty hearing a person approaching from behind. N.C.G.S. § 14-32.1(a).

## 3. Indictment and Information— indictment and instruction—fatal variance

There was a fatal variance between an indictment for aggravated assault on a handicapped person and the instruction where the instruction permitted the jury to convict on a criminal negligence theory which was not alleged in the indictment. This substantially affected defendant's ability to prepare a defense.

## 4. Assault— on a handicapped person—sentencing

The trial court did not err by entering judgment on a charge of aggravated assault on a handicapped person where a judgment was also entered on a charge of armed robbery of that person. N.C.G.S. § 14-32.1(e) (which bars punishment for assaulting a handicapped person when conduct is covered by another statute providing greater punishment) does not apply here.

Appeal by defendant from judgments entered 23 April 2003 by Judge Melzer A. Morgan, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 10 June 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Joseph E. Herrin, for the State.*

*Kathryn L. VandenBerg for defendant-appellant.*

THORNBURG, Judge.

Celeste Marche Hines ("defendant") appeals her convictions of one count of robbery with a dangerous weapon (01 CRS 55914), one count of aggravated assault on a handicapped person (01 CRS 22179), two counts of obtaining property by false pretenses (02 CRS 12603), one count of financial card theft and one count of financial card fraud (02 CRS 12604). For the reasons stated herein, we vacate the judgment of the trial court on the aggravated assault on a handicapped person charge. We find no prejudicial error in defendant's remaining convictions.

The issues presented on appeal are whether the trial court erred (1) by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon; (2) by denying defendant's motion to dismiss the charge of aggravated assault on a handicapped person; (3) in its instructions to the jury on the charge of aggravated assault on a handicapped person; and (4) by not arresting judgment on the charge of aggravated assault on a handicapped person.

At trial, the victim, Delores Sampedro ("Sampedro"), who is hearing impaired, and defendant offered two versions of the events of 14 June 2001. According to Sampedro's testimony, on 14 June 2001 she was stopped at a stop sign on her way home from grocery shopping when her car was rear-ended. When she exited her vehicle to see if it was damaged, the driver of the other car, later identified as defendant's cousin Ronda Singletary ("Singletary"), apologized for the accident and suggested that they move their cars to an adjacent road to avoid blocking traffic. Both parties did so. After moving her car, Sampedro again exited her vehicle. Singletary and defendant, who had been riding as a passenger, also exited their vehicle. Singletary and Sampedro discussed exchanging insurance information and defendant and Singletary returned to their vehicle. Singletary began writing on the back of an envelope. Sampedro then approached defendant's vehicle to obtain the insurance information, and Singletary asked Sampedro to write down her information. Before giving anything to Sampedro, Singletary suggested that Sampedro make sure her car would start. Sampedro returned to her vehicle, turned the key in the ignition and the engine promptly started.

Sampedro then realized that she still had not obtained Singletary's information, so she checked her side mirror to make sure there were no approaching cars and started to open her car door. Sampedro remembers nothing else until she woke up in the emergency room.

Dr. Christopher Lepak treated Sampedro at Forsyth Memorial Hospital's emergency room on 14 June 2001 and testified for the State. Dr. Lepak testified that, in his opinion, Sampedro "had received a blunt force trauma to her head" and that this head injury was inconsistent with a fall. He opined that while her broken clavicle and other scrapes may have been the result of a fall, "I can for sure say that the head [injury] was not from a fall." At the close of the State's evidence the trial court denied defendant's motion to dismiss all the charges against her.

Defendant took the stand and testified that after the accident occurred and the women discussed exchanging insurance information, Sampedro was standing at the passenger side of the car with her pocketbook on her arm. After receiving a signal from Singletary, defendant grabbed Sampedro's pocketbook and Singletary drove off. Defendant denied striking Sampedro on the head, and testified that she did not see Singletary strike Sampedro with anything either. At the close of defendant's case, defendant renewed her motion to dismiss all the charges against her, which the trial court denied. The jury returned a guilty verdict on all charges. Defendant was sentenced to a minimum of 96 months and a maximum of 125 months in the custody of the North Carolina Department of Correction for robbery with a dangerous weapon. The sentences for the remaining charges were suspended. Defendant appeals.

I

[1] Defendant first contends that the trial court erred by denying her motion to dismiss the charge of robbery with a dangerous weapon for insufficient evidence. We disagree.

"When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d

164, 169 (1980). If a jury could reasonably infer defendant's guilt when the evidence is viewed in the light most favorable to the State, then the motion must be denied. *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2002).

The elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of the person is endangered or threatened." *State v. Mann*, 355 N.C. 294, 303, 560 S.E.2d 776, 782 (2002), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). Defendant argues that the State failed to present substantial evidence that a weapon was used in the robbery of Sampedro. However, at trial Dr. Lepak testified that in his opinion Sampedro's head injury resulted from a blunt force trauma and was inconsistent with a fall. He stated that the abnormal shape and severe swelling present in Sampedro's head injury "suggest[ed] massive trauma to the head from a blunt force object" possibly "a baton, crowbar, [or] something of that size and length." This testimony would permit a reasonable jury to infer the existence of a dangerous weapon. *See State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 664 (1965) (finding that the appearance of the wound on the victim's scalp permitted the inference that a dangerous weapon was used). Moreover, in *State v. Singletary*, —— N.C. App. ——, 594 S.E.2d 64, 69 (2004), this Court held that the trial court in Singletary's trial did not err by denying the motion to dismiss this charge based on the same evidence of Sampedro's injury. Accordingly, we conclude that the motion to dismiss this charge in the instant case was properly denied.

## II

[2] Defendant next contends that the trial court erred in denying her motion to dismiss the aggravated assault on a handicapped person charge because the State failed to show that the victim was handicapped as defined by N.C. Gen. Stat. § 14-32.1, the statute which creates this offense. Again, we disagree.

In relevant part, N.C. Gen. Stat. § 14-32.1 provides:

(a) For purposes of this section, a "handicapped person" is a person who has:

    (1) A physical or mental disability, such as decreased use of arms or legs, blindness, deafness, mental retardation or mental illness; or

(2) Infirmity which would substantially impair that person's ability to defend himself.

N.C. Gen. Stat. § 14-32.1(a) (2003). Defendant argues that the State failed to show that Sampedro's hearing problem would have "substantially impaired" Sampedro's ability to defend herself.

Viewing the evidence in the light most favorable to the State, as we must, we conclude that sufficient evidence of the victim's handicap was presented to allow a reasonable jury to find that Sampedro was handicapped for the purposes of the statute at issue. On direct examination, Sampedro testified that she would not be able to hear someone come up behind her unless "that person was making a lot of noise." Further, when asked by the District Attorney if being out on the street where the accident occurred would affect her ability to hear, she stated that it would be "[m]ore difficult because there would be environmental noises which would interfere with [her] detecting any person coming up." Sampedro also testified that she underwent surgery to improve her hearing through the insertion of an implant, but at the time of the incident she had not been "fitted up with the exterior equipment, so it did not help in being able to . . . hear or understand." Accordingly, we conclude that the State presented substantial evidence that Sampedro is a handicapped person within the meaning of N.C. Gen. Stat. § 14-32.1. This assignment of error is overruled.

### III

**[3]** Defendant next argues that the trial court's instruction to the jury on the aggravated assault on a handicapped person charge was a material and fatal variance from the indictment. We agree and vacate the judgment for this count.

"It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980). Further, when a variance exists between the bill of indictment and the jury charge, the Court must inquire whether the variance was prejudicial error, and therefore fatal. *State v. Rhyne*, 39 N.C. App. 319, 324, 250 S.E.2d 102, 105 (1979). Such an inquiry requires an examination of the purposes of an indictment. *Id.* The four recognized purposes of an indictment are (1) to identify the crime with which defendant is charged, (2) to protect defendant against being charged twice for the

same offense, (3) to provide defendant with a basis on which to prepare a defense, and (4) to guide the court in sentencing. *Id.* at 324, 250 S.E.2d at 105-06.

In the instant case, the State's indictment for aggravated assault on a handicapped person includes the following language:

[T]he defendant named above unlawfully, willfully and feloniously did alone or acting in concert, assault and strike a handicapped person, Delores Victori Sampedro, by having in possession and use of a dangerous weapon to wit: an unknown blunt force object causing trauma to the head of the victim.

The trial court instructed the jury as follows:

For you to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt: First, that the defendant acting by herself or acting together with another person assaulted Delores Sampedro by intentionally striking Ms. Sampedro in the head, *or intentionally assaulted Ms. Sampedro by pulling off in the car when part of Ms. Sampedro's body was in the car or near enough to be hit by the car as it pulled away.*

(Emphasis added). Thus, the instruction given permitted the jury to convict defendant on a criminal negligence theory of assault,[1] a theory not alleged in the indictment.

We find that the variance between the indictment and the jury instruction substantially affected defendant's ability to prepare a defense. The trial court's instruction allowed the jury to convict defendant on a theory of assault for which defendant had not been indicted. On the stand, defendant admitted grabbing Sampedro's purse, but denied intentionally striking her with a blunt force object presumably based upon the theory of the crime alleged by the State in the indictment. Allowing the jury to convict defendant on the unindicted assault by criminal negligence theory constituted prejudicial and reversible error. For this reason, the judgment entered upon defendant's conviction for aggravated assault on a handicapped person must be vacated. *See State v. Williams*, 318 N.C. 624, 631, 350 S.E.2d 353, 357 (1986) (vacating the judgment entered upon the

---

1. The intent required for an assault offense "may be implied from culpable or criminal negligence, if the injury or apprehension thereof is the direct result of intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict injury." *State v. Coffey*, 43 N.C. App. 541, 543, 259 S.E.2d 356, 357 (1979) (internal citation omitted).

defendant's conviction when the trial court's instructions permitted the jury to convict the defendant on a different theory of rape than was alleged in the indictment).

IV

[4] Defendant's remaining argument is that the trial court erred in entering judgment on the charge of aggravated assault on a handicapped person where the relevant statute provides that a defendant is not guilty of this offense if her conduct is covered by another provision of law providing greater punishment. Defendant asserts that in light of this statutory language, punishing defendant's conduct under both the aggravated assault on a handicapped person and robbery with a dangerous weapon statutes violated the clear intent of our legislature. As this issue could recur on remand, we address it herein. *See State v. Lloyd*, 354 N.C. 76, 128, 552 S.E.2d 596, 631 (2001).

In her appellate brief, defendant concedes that the robbery with a dangerous weapon offense and the aggravated assault on a handicapped person offense each contain an element the other does not, and, thus, are separate offenses for the purposes of a double jeopardy analysis. *See Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932) ("the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not"). However, in North Carolina, the intent of the legislature controls whether an individual may be punished for the same conduct under more than one criminal statute. *See State v. Bailey*, 157 N.C. App. 80, 86-87, 577 S.E.2d 683, 687-88 (2003). Thus, defendant asserts that the language of the assault on a handicapped person statute shows that our legislature did not intend for an individual to be punished under this statute as well as under another statute allowing for greater punishment. The specific language in the assault on a handicapped person statute allows for punishment "[u]nless [defendant's] conduct is covered under some other provision of law providing greater punishment . . . ." N.C. Gen. Stat. § 14-32.1(e) (2003).

As support for her argument, defendant cites this Court's recent holding in *State v. Ezell*, 159 N.C. App. 103, 582 S.E.2d 679 (2003). In *Ezell* the Court stated:

> N.C. Gen. Stat. § 14-32.4 contains specific language indicating that the legislature intended that § 14-32.4 apply only in the absence of other applicable provisions. Section 14-32.4 indicates

that it applies "*[u]nless* the conduct is covered under some other provision of law providing greater punishment."

*Id.* at 109, 582 S.E.2d at 684 (alternation in original). However, in *Ezell*, the defendant was convicted and sentenced pursuant to N.C. Gen. Stat. §§ 14-32 and 14-32.4, two assault provisions, whereas the defendant in the instant case was charged with violations of one assault statute and one robbery statute. Accordingly, we distinguish *Ezell*. Moreover, we note that North Carolina courts have consistently allowed convictions for both robbery with a dangerous weapon and felonious assault. *See, e.g., State v. Alexander*, 284 N.C. 87, 93-94, 199 S.E.2d 450, 454-55 (1973), *cert. denied*, 415 U.S. 927, 39 L. Ed. 2d 484 (1974). Thus, we conclude that the statutory language cited by defendant bars punishment under both this provision and another provision of an assault statute. Since we are not called upon to make such an application in the case at bar, defendant's argument is unavailing. This assignment of error is overruled.

No error as to defendant's convictions in case numbers 01 CRS 55914, 02 CRS 12603 and 02 CRS 12604.

Vacate the judgment for aggravated assault on a handicapped person, case number 01 CRS 22179.

Judges HUDSON and GEER concur.